IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. CR-15-128-D |
| VICTOR DEWAYNE GAINES, | ) | |
| Defendant. | ) | |

## **O R D E R**

Before the Court are Defendant's Motion to Suppress Evidence [Doc. No. 19] and Defendant's Motion to Dismiss and Suppress Statements and Keys [Doc. No. 24], which the government has timely opposed.[1] Evidentiary hearings were held on September 23, 2015, and November 18, 2015, at which Defendant Victor Gaines personally appeared with appointed counsel, Assistant Federal Public Defender Paul Antonio Lacy, and the government appeared through Assistant United States Attorney Wilson D. McGarry; Assistant United States Attorney Ashley Altshuler also appeared at the second hearing. The Court received the testimony of one witness, Detective Keith Medley of the Oklahoma City Police Department, and heard oral argument by Mr. McGarry; defense counsel elected to stand on the arguments set forth in his briefs. Upon consideration of the motions, the evidence presented, and the arguments of counsel, the Court issues its ruling.

---

[1] Although the caption of the second motion suggests it seeks dismissal of the case, no argument or legal authority for dismissal is presented. Thus, the motion is treated solely as one seeking the suppression of evidence.

Mr. Gaines is charged in the Indictment with three offenses: Count 1, possession of cocaine base and marijuana with intent to distribute in violation of 21 U.S.C. § 841(b)(1)(C); Count 2, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and Count 3, being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). By the first motion, he seeks to suppress evidence obtained on February 25, 2015, from the execution of a search warrant issued by a district judge of the District Court of Oklahoma County, Oklahoma, for apartment number 461 of Willow Cliff Apartments located at 5516 Willow Cliff Road in Oklahoma City. Mr. Gaines challenges the validity of the search warrant under *Illinois v. Gates*, 462 U.S. 213 (1983), and *Franks v. Delaware*, 438 U.S. 154 (1978), and seeks the suppression of all evidence seized during the search because the executing officers' reliance on the warrant allegedly is not protected by the good-faith exception to the exclusionary rule recognized in *United States v. Leon*, 468 U.S. 897 (1984). "A defendant challenging a search pursuant to a warrant has the burden of proof." *United States v. Harrison*, 566 F.3d 1254, 1256 (10th Cir. 2009).

By the second motion, Mr. Gaines seeks to suppress incriminating statements he made to officers while he was detained during the execution of the warrant, and keys to the apartment that he provided at an officer's request to avoid a forced entry. Mr. Gaines contends he was arrested without a warrant and without *Miranda* warnings. The government contends Mr. Gaines was not arrested but was subjected to an investigatory detention that was justified under the circumstances, reasonably spanned the execution of the warrant, and did not require *Miranda* warnings. The government bears the burden to prove the validity

of a warrantless seizure. *See Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Herrera*, 444 F.3d 1238, 1242 (10th Cir. 2006).

Because the facts necessary to decide the two motions are distinct, the Court will set forth the evidence presented at the hearing as pertinent to the discussion of the issues.

**1.     Validity of the Search Warrant**

Mr. Gaines first asserts that the affidavit provided by Det. Medley to obtain the search warrant was insufficient, on its face, to establish probable cause for the issuance of a warrant. *See* Def.'s Mot. Suppress Evidence, Ex. 1 [Doc. No. 19-1] (hereafter, "Affidavit"). He contends the Affidavit provides no information to establish the reliability of "several different confidential sources [who reported] that 'Lil Vic' (identified as Victor Gaines) was selling illegal narcotics from his apartment at 5516 Willow Cliff #461," and lacks sufficient information to connect illegal drug trafficking with the apartment. *See id*. p.4. Mr. Gaines also asserts that the Affidavit contains false statements that must be disregarded. The government, on the other hand, argues that the Affidavit sets forth sufficient facts, even if erroneous information is disregarded, to establish probable cause that evidence of drug trafficking would be found at Mr. Gaines' apartment.

Probable cause to search is defined as a "fair probability that contraband or evidence of a crime will be found in a particular place" under the totality of the circumstances. *Gates*, 462 U.S. at 238; *see United States v. Long*, 774 F.3d 653, 658 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 2068 (2015); *United States v. Biglow*, 562 F.3d 1272, 1280-81 (10th Cir. 2009). "Once [an issuing judge] determines that probable cause exists, the role of a reviewing court

3

is merely to ensure the Government's affidavit provided a 'substantial basis' for reaching that conclusion." *Biglow*, 562 F.3d at 1281 (quoting *Gates*, 462 U.S. at 238-39); *see Mass. v. Upton*, 466 U.S. 727, 732-33 (1984). To satisfy the "fair probability" standard, the affidavit must show "a sufficient nexus" between suspected criminal activity and the place to be searched, depending on the particular facts of each case. *See Bigelow*, 562 F. 3d at 1279. A finding of probable cause may be based "upon information received through an informant, rather than upon [a police officer's] direct observation, so long as the informant's statement is reasonably corroborated by other matters within the officer's knowledge." *See Long*, 774 F.3d at 659 (internal quotation and emphasis omitted).

In this case, Mr. Gaines also challenges under *Franks* certain information stated in the Affidavit executed by Det. Medley. To satisfy *Franks*, a defendant must show an officer's affidavit contains false statements or material omissions, that were made intentionally or with reckless disregard for the truth, and that were necessary to a finding of probable cause. *See United States v. Williams*, 576 F.3d 1149, 1160 (10th Cir. 2009). Stated another way:

> A search warrant must be voided and the fruits of the search suppressed where a court (1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant and (2) concludes, after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause.

*United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008); *see United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015) ("[A] court must strike any intentional, knowing, or reckless misstatements in the warrant application affidavit and assess the affidavit without them. If instead the affidavit contains intentional, knowing, or reckless

4

omissions, a court must add in the omitted facts and assess the affidavit in that light.") (citations omitted). "To establish reckless disregard in the presentation of information to a magistrate judge, 'there must exist evidence that the officer in fact entertained serious doubts as to the truth of his allegations . . . and [a] factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations.'" *Stonecipher v. Valles*, 759 F.3d 1134, 1142 (10th Cir.), *cert. denied*, 135 S. Ct. 881 (2014) (quoting *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994)). "[O]missions are made with reckless disregard if an officer withholds a fact in his ken that any reasonable person would have known that this was the kind of thing the judge would wish to know." *Wilson v. Russo*, 212 F.3d 781, 787-88 (3d Cir. 2000) (cited with approval in *Stonecipher*) (internal quotation omitted).

Mr. Gaines challenges the following statements in the Affidavit:

1. A check of Victor Gaines showed that he has prior convictions for Shooting with Intent to Kill and arrest for Trafficking CDS [meaning Controlled Dangerous Substance], Possession of CDS with Intent, and Possession of Marijuana.

2. Within the last 48 hours your affiant was conducting surveillance on [the] apartment when an unknown black male emerged from the apartment and brought two trash bags down and laid them on the ground next to the dumpster.

3. The trash bags had several sandwich baggies tear-offs with marijuana residue and a pill bottle with the name Victor Gaines on the bottle.

4. In addition, your affiant has observed Victor Gaines come and go from the apartment.

5

*See* Def.'s Mot. Suppress Evidence [Doc. No. 19], pp.2-3 (quoting Affidavit, p.4). For reasons discussed *infra*, the Court finds upon consideration of the Affidavit in light of Det. Medley's hearing testimony and the analysis required by *Franks* that the information provided to the state court judge regarding Mr. Gaines' criminal history and Det. Medley's surveillance contains false statements and omissions that were recklessly made and must be corrected.

First, regarding criminal history, Det. Medley admitted that the reference to prior "convictions" (plural) was incorrect and Mr. Gaines had a single conviction in 2002 for shooting with intent to kill. Det. Medley attributed the misstatement to a typographical error. Det. Medley also admitted that Mr. Gaines had no prior arrest for any illegal drug offense, either trafficking or possession. He explained the incorrect statement as derived from his review of an internal police department report (or "VARUNA report") that collects information about an individual's contacts with police, including contacts other than arrests. Det. Medley candidly testified that he relied on a "cover sheet" of the VARUNA report and that subsequent pages and an October 2009 crime report, which he also reviewed, showed Mr. Gaines' other contacts with police officers included a prior arrest on an outstanding warrant for violation of a suspended sentence and not an arrest for the "CDS" offenses listed in the Affidavit. While Det. Medley viewed the arrest as "drug-related" due to the context in which it occurred, he had no excuse for the specific misrepresentation of the arrest in his Affidavit. In truth, Mr. Gaines had no record of any arrest for illegal drug activity and one criminal conviction more than 12 years earlier. The government contends the mistake

resulted from mere negligence by Det. Medley. The Court finds, however, that Det. Medley recklessly provided false information in the Affidavit regarding Mr. Gaines' record of arrest for drug offenses and this information could not properly be considered by the judge who issued the search warrant.

Second, regarding Det. Medley's surveillance and trash pull, the Affidavit states that "an unknown black male emerged from the apartment and brought two trash bags down." *See* Affidavit, p.4. As revealed by his hearing testimony, Det. Medley did not disclose that the male was a child who appeared to be approximately 8-10 years old, and that from Det. Medley's vantage point, he did not see the child exit apartment 461 but saw the child come from the vicinity of the apartment. The Affidavit also overstates the contents of the trash bags. Det. Medley testified that, in truth, two sandwich baggies found in the trash had green flecks that he assumed to be marijuana residue but he did not attempt to confirm the nature of the substance with any testing, although a presumptive field test kit for marijuana exists. He provided no explanation of the basis for his assumption or belief – stated as an affirmative fact – that the baggies had previously contained marijuana, and he made only a conclusory reference to prior experience in his hearing testimony. Det. Medley similarly provided no explanation for stating that a prescription pill bottle had a label bearing Mr. Gaines' name without disclosing it bore an address other than apartment 461. Finally, the Affidavit stated that Det. Medley had seen Mr. Gaines "come and go from the apartment" when, according to his testimony, he actually had only observed Mr. Gaines enter the

apartment on one prior occasion. Therefore, neither the pill bottle nor Det. Medley's surveillance supported an inference that Mr. Gaines resided in the apartment.

The Court finds that Det. Medley's false or misleading statements in the Affidavit must be corrected when considering its sufficiency to establish probable cause because the statements were made with reckless disregard for the truth. During the hearing, Det. Medley testified candidly and credibly regarding his investigative activities and surveillance of apartment 461, and the Court therefore accepts as true Det. Medley's hearing testimony in which he made concessions unfavorable to the government's position regarding both the validity of the search warrant and the validity of Mr. Gaines' detention, discussed *infra*. The Court finds from the substance of Det. Medley's testimony and his demeanor as a witness that Det. Medley was recklessly indifferent to the falsity of material statements in his Affidavit and the misleading effect of his omissions of certain true facts, even though he may not have deliberately intended to mislead the state court judge who issued the search warrant.

Det. Medley based his statement that Mr. Gaines had a prior arrest for drug offenses on a cursory review of a VARUNA report that, upon closer review and reference to the pertinent crime report, showed the statement to be false. Det. Medley appeared unconcerned during the hearing about the significance of his erroneous statement that Mr. Gaines had been previously arrested for drug trafficking and possession. Clearly, Mr. Gaines' prior criminal history was a material fact in the probable cause determination. *See United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004) ("criminal history, combined with other factors, can

support a finding of reasonable suspicion or probable cause"). But instead of stating this fact correctly, Det. Medley turned a blind eye to records that were right in front of him.

Det. Medley also recklessly omitted from the Affidavit the apparent age of the "unknown black male" who carried the trash bags to the dumpster, which was known to him and obviously material. Even if one assumes the trash bags were carried from apartment 461, the fact that a child was taking out trash from the apartment suggests a family residence and not an illegal drug operation. Det. Medley was equally unconcerned about the misleading nature of his statement that the pill bottle in the trash bore Mr. Gaines' name while omitting the fact that it showed his residence to be a different address. This information was material because the sole purpose of mentioning Mr. Gaines' name on the pill bottle was to connect him to apartment 461. This omission gains significance in light of the fact that Det. Medley did not actually see the child with the trash bags (which contained the pill bottle) exit apartment 461 – information that was also omitted from the Affidavit.

More importantly, Det. Medley stated the presence of marijuana residue in the plastic baggies as an affirmative fact rather than a mere belief or suspicion. This fact was presented as both a basis to infer that illegal drugs would be found in apartment 461 and to corroborate information from confidential sources – without any indicia of the reliability or timeliness of their reports – that Mr. Gaines was then dealing drugs from the apartment. Det. Medley provided no factual basis in either the Affidavit or his hearing testimony for representing that the baggies contained marijuana residue, and he appeared completely unconcerned about the significance of this omission. Det. Medley's failure to do any testing of the substance in the

9

baggies, his failure to offer any factual basis to infer the baggies had contained marijuana, and his demeanor while testifying, lead the Court to conclude that Det. Medley entertained serious doubt about the nature of the substance. Moreover, the omitted information is of a kind that a reasonable person would have recognized as important for the warrant-issuing judge to know.

In summary, the Court finds the challenged statements in the Affidavit were recklessly made by Det. Medley with utter disregard for the truth of the matters asserted. The Court further finds that, without the false statements and with complete statements of material facts, the judge who issued the search warrant would have lacked a sufficient factual basis for a finding of probable cause to issue a warrant to search apartment 461 for illegal drugs or evidence of Mr. Gaines' alleged drug dealing.

To satisfy *Gates*, Mr. Gaines must show the Affidavit contains insufficient facts to establish a "fair probability" that evidence of a crime would be found in apartment 461. In light of Det. Medley's hearing testimony and the above findings, the Court has corrected the material portion of the Affidavit in the manner directed by *Franks*, as shown by the attached Exhibit A to this Order.[2] Upon consideration of the corrected Affidavit, the Court is persuaded that the state court judge who issued the search warrant would have reached a different probable-cause determination if she had been fully informed of the true facts

---

[2] The material portion appears on the fourth page of the Affidavit. The first three pages set forth Det. Medley's training and experience, his knowledge of criminal street gangs, and common facts regarding street gangs and their members. Exhibit A reflects added information by underlining, and excised information by line-through.

revealed by Det. Medley's hearing testimony. Therefore, the Court finds that Mr. Gaines has carried his burden to prove the invalidity of the search warrant.

**2.      Good Faith Exception**

Relying on the good faith exception of *Leon*, the government argues that the evidence obtained with the search warrant should not be excluded because the officers executing the warrant were entitled to rely on the issuing judge's finding of probable cause and the Affidavit was not so devoid of factual support that reliance on it was wholly unwarranted. Mr. Gaines contends that reliance on the Affidavit, particularly in light of *Franks*, is unreasonable and the good faith exception does not apply.

Under *Leon*, suppression of evidence obtained with a search warrant "remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth." *See Leon*, 468 U.S. at 923 (citing *Franks*). If the situation described in *Franks* is found to exist, "'an officer would not have reasonable grounds for believing a warrant was properly issued . . . , [and] the good-faith exception to the exclusionary rule would not apply.'" *See United States v. Tuter*, 240 F.3d 1292, 1299 (10th Cir. 2001) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (citation omitted)). Thus, under *Franks*, "if a defendant establishes that a police officer made false statements in an affidavit supporting a search warrant knowingly or with reckless disregard for the truth, and that the false statement was necessary to the finding of probable

11

cause, the evidence seized during the resultant search must be excluded." *Tuter*, 240 F.3d at 1299.

In light of the Court's determination that Det. Medley recklessly disregarded the truth in applying for the search warrant with his Affidavit and that full disclosure of the true facts would have altered the finding of probable cause to search, the good faith exception does not apply. Therefore, all evidence seized through execution of the search warrant must be suppressed.

### 3. Validity of Mr. Gaines' Detention

By his second motion, Defendant seeks an order suppressing statements he made to police officers and keys to the apartment he provided during a "traffic stop," as it was characterized in a police report. Defendant contends the stop was actually an illegal arrest and the statements were made after he was taken into custody without *Miranda* warnings. The government contends the seizure was an investigative *Terry* stop supported by reasonable suspicion of criminal activity and circumstances warranting Mr. Gaines' detention for a reasonable amount of time needed to execute the search warrant.

To determine whether Mr. Gaines' detention was constitutionally permitted, courts ask both "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *See Terry v. Ohio*, 392 U.S. 1, 20 (1968). "An investigatory detention is justified at its inception if the specific and articulable facts and rational inferences drawn from those facts give rise to a reasonable suspicion a person has [committed] or is committing a crime."

*United States v. McHugh*, 639 F.3d 1250, 1255 (10th Cir. 2011) (internal quotations omitted). "Whether an investigative detention is supported by an objectively reasonable suspicion of illegal activity does not depend on any one factor but on the totality of the circumstances." *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998) (internal quotation omitted); *see United States v. Conner*, 699 F.3d 1225, 1228 (10th Cir. 2012); *McHugh*, 639 F.3d at 1256. The Supreme Court has emphasized that reviewing courts "must look at the 'totality of circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing. This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417-18 (1981)). Further, a determination that reasonable suspicion exists "need not rule out the possibility of innocent conduct." *Id*. at 277; *see Conner*, 699 F.3d at 1228. "Reasonable suspicion requires only 'some minimal level of objective justification.'" *Conner*, 699 F.3d at 1228 (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).

An investigatory stop that is justified at its inception must also be reasonable in scope. "In order to satisfy this requirement, the ensuing detention 'must not exceed the reasonable duration required to complete the purpose of the stop.'" *See United States v. Burleson*, 657 F.3d 1040, 1045 (10th Cir. 2011) (quoting *United States v. Rice*, 483 F.3d 1079, 1082 (10th Cir. 2007)); *see also Florida v. Royer*, 460 U.S. 491, 500 (1983) ("an investigative detention

must be temporary and last no longer than is necessary to effectuate the purpose of the stop"). For example, "in the context of an investigatory stop of a motorist, once an officer returns the driver's license and registration, the traffic stop has ended and questioning must cease; at that point, the driver must be free to leave. The detention cannot be continued beyond this point unless the driver consents to further questioning or the officer has reasonable suspicion to believe other criminal activity is afoot." *Burleson*, 657 F.3d at 1045 (internal quotations and citations omitted).

Det. Medley testified that eight law enforcement officers prepared to execute the search warrant for apartment 461 on February 25, 2015, by attending a briefing meeting regarding Mr. Gaines and gaining access to the apartment. The information regarding Mr. Gaines included that he was a known member of a criminal street gang and was considered to be a dangerous, violent individual. The officers planned to use Dolese Park, which is near the Willow Cliff Apartments, as a staging area. The officers traveled to the staging area in multiple vehicles; Det. Medley drove alone in a white van.

En route to the location, Det. Medley saw Mr. Gaines' vehicle, a black Suburban, leaving the apartment complex but he could not identify the driver. He followed the Suburban to a gas station approximately one or one-and-one-half miles away on the southeast corner of Northwest 50th and Meridian in Oklahoma City. Det. Medley parked on an opposite corner across four lanes of traffic and a center turn lane, at the northeast corner of Northwest 50th and Meridian. Det. Medley observed the Suburban parked at a gas pump and saw Mr. Gaines meet with another man who parked his vehicle near the store building. The

14

two men talked at the rear of Mr. Gaines' vehicle with the rear doors open for a few minutes, and then both left without purchasing gas or other store items. Although Det. Medley could not see what was in the Suburban or what the men were doing and did not see anything change hands between the two men, the encounter appeared to him to be a "drug deal," an impression that Det. Medley characterized as a "hunch."

As the two men left the gas station and went separate ways, a marked patrol unit stopped Mr. Gaines; Det. Medley followed the other man going the opposite direction. In his rearview or side mirror, Det. Medley believed he saw Mr. Gaines make an improper left turn, allowing his vehicle to enter the right-hand lane. However, Det. Medley had called uniformed police officers to come make a traffic stop when he first parked to observe Mr. Gaines at the gas station, before witnessing the alleged drug deal or any traffic violation. It was unclear from Det. Medley's testimony whether his later observations were communicated to patrol officers, but the detention of Mr. Gaines clearly did not proceed as a traffic stop. There is no evidence a traffic violation was discussed, and no citation was issued. Similarly, no evidence was presented that the patrol officer inquired during the initial stop into any alleged "drug deal" occurring at the gas station. Instead, immediately upon stopping Mr. Gaines' vehicle, a patrol officer directed Mr. Gaines to exit the vehicle, placed him in the back seat of a patrol car, and transported him to Dolese Park. Another officer drove Mr. Gaines' Suburban to the park using the keys in the vehicle.

Det. Medley arrived at Dolese Park after Mr. Gaines, who remained seated in the rear of the police car with the door open and his feet outside of the vehicle. Mr. Gaines was not

15

handcuffed and was talking to an FBI agent, Agent Furr, in a conversational tone. Agent Furr and Det. Medley informed Mr. Gaines that they had a search warrant for his apartment, and asked him to cooperate. Mr. Gaines stated that his wife and child were in the apartment, and he pointed out which key on his key ring fit the apartment door lock. Mr. Gaines (still in the police car) and his vehicle were then driven to the Willow Cliff Apartments and detained while officers prepared to execute the search warrant. Mr. Gaines was not handcuffed, but as Det. Medley candidly testified, Mr. Gaines was not free to go. The duration of Mr. Gaines' detention at Dolese Park was short; maybe five minutes elapsed from the time of the stop until he was taken to the apartment complex.

Mr. Gaines remained in the marked police car in the parking lot of the complex while police officers approached the apartment. They did not succeed in unlocking the door with his key because a woman inside the apartment prevented it from being opened; officers forcefully entered the apartment by breaching the door. While other officers were executing the warrant, Det. Medley returned to talk to Mr. Gaines, after taking off his police raid vest and moving Mr. Gaines to an unmarked car. Det. Medley interviewed Mr. Gaines in the parking lot during the search in a conversational manner, and again asked him to cooperate. During this conversation, which lasted about 20 minutes, Mr. Gaines was questioned about various topics, including gang activity and shootings. When asked about contraband in the apartment, Mr. Gaines stated there was marijuana in a dresser drawer and a gun in the closet. Det. Medley told Mr. Gaines he was not under arrest and did not provide *Miranda* warnings.

Consistent with Mr. Gaines' statement, illegal drugs and a pistol were found in the apartment. Mr. Gaines was then handcuffed and formally arrested. The period of time from initiating the traffic stop to finding contraband was about 30 minutes, and the complete time period until Mr. Gaines was taken to jail spanned about one-and-one-half hours. Mr. Gaines' vehicle was searched at the apartment complex, presumably incident to his arrest, but no drugs were found.

The government asserts that an investigatory stop of Mr. Gaines was justified by a reasonable suspicion of illegal drug activity. The government relies on both the search warrant and Det. Medley's hunch about a drug deal at the gas station to argue that Mr. Gaines was lawfully detained while law enforcement officers investigated an articulable suspicion that he was engaged in criminal activity. However, the only asserted purpose of Mr. Gaines' detention – which exceeded both the duration of a traffic stop and an investigation of a possible drug deal at the gas station – was to control Mr. Gaines' movement and solicit his assistance while executing the search warrant. The government argues that the officers' actions in confining Mr. Gaines in police vehicles and moving him and his vehicle from one location to another served proper goals of facilitating the execution of the warrant, minimizing a safety threat, and avoiding possible embarrassment to Mr. Gaines that might arise from detaining him alongside traffic on a public street.

Upon examination of the facts and evidence, there can be no doubt that Mr. Gaines was seized on February 25, 2015, while the police officers executed the search warrant. *See Michigan v. Summers*, 452 U.S. 692, 695 (1981) (detention of resident found outside house

17

and required to re-enter and stay during search pursuant to a warrant "constituted a 'seizure' within the meaning of the Fourth Amendment"). Mr. Gaines was confined in police vehicles; police officers took control of his vehicle and keys and moved him to different locations; and he was not free to leave. The government attempts to justify Mr. Gaines' seizure, particularly the duration and scope of his detention, as incident to the execution of the search warrant. However, the "*Summers* rule," which allows police officers to detain an occupant in the immediate vicinity of a residence to be searched, does not permit the detention of an occupant who is located and stopped a mile away from the premises. *See Bailey v. United States*, 133 S. Ct. 1031, 1042 (2013). Further, in this case, the government's justification is undermined by the invalidity of the search warrant, according to the findings of the Court set forth *supra.* Therefore, unless the government establishes an independent basis for an investigatory detention of Mr. Gaines, the evidence obtained as a result of his seizure must be suppressed as the fruits of an invalid search warrant and illegal detention.

The government argues that the issuance of a search warrant for Mr. Gaines' apartment and Det. Medley's hunch of a possible drug deal supply, at least, reasonable suspicion to believe criminal activity was afoot, and justify the detention of Mr. Gaines while officers conducted the search and investigated possible drug dealing. However, the scope of the detention plainly exceeded the investigatory activities necessary to issue a traffic citation or rule out a possible drug deal from Mr. Gaines' vehicle, where he was located at the time of his initial seizure. Further, the Affidavit submitted to a judge days earlier provided no basis for officers to conclude that Mr. Gaines was, at the moment of his

detention, engaged in criminal activity. The government also fails to point to any connection between Mr. Gaines' alleged drug deal at the gas station and information about the apartment that might justify tailoring the nature and scope of Mr. Gaines' detention to facilitate the search of the apartment. In short, the Court is not persuaded that the seizure of Mr. Gaines was permitted by any of the legal arguments on which the government relies.

Similarly, the government offers no argument or supporting facts to suggest Mr. Gaines' answers to Det. Medley's questions were consensual and voluntary, that is, that he volunteered the information as a product of his own free will and not as a result of his detention for execution of the warrant. Accordingly, the Court finds that the information provided by Mr. Gaines during his detention was not lawfully obtained and must be suppressed.

For these reasons, the suppression of Mr. Gaines' statements and the keys he surrendered to the detaining officers is required.

IT IS THEREFORE ORDERED that Defendant's Motion to Suppress Evidence [Doc. No. 19] and Defendant's Motion to Suppress Statements and Keys [Doc. No. 24] are GRANTED.

IT IS SO ORDERED this  15th  day of December, 2015.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE

The Oklahoma City Violent Crimes Task force received information from several different confidential sources that "Lil Vic" (identified as Victor Gaines) was selling illegal narcotics from his apartment at 5516 Willow Cliff #461.

A check of Victor Gaines showed that he has a prior conviction~~s~~ in 2002 for Shooting with Intent to kill ~~and arrest for Trafficking CDS, Possession of CDS with Intent, and Possession of Marijuana~~.  In addition Victor Gaines has been mentioned in the recent on-going feud within the NHC 60 street gang, which he is a member.

Within the last 48 hours your affiant was conducting surveillance on apartment when an unknown black male, who appeared to be an 8-10 year old child, emerged from the vicinity of the apartment and brought two trash bags down and laid them on the ground next to the dumpster. Your affiant retrieved the bags, never losing sight of the bags and went through them.

The trash bags had several sandwich baggies tear-offs with suspected marijuana residue and a pill bottle with the name Victor Gaines on the bottle. The address on the pill bottle is not the same address as the apartment. The suspected marijuana residue has not been confirmed through testing. In addition your affiant has observed Victor Gaines enter ~~come and go from~~ the apartment on one prior occasion.

As a result of your affiant's training and experience, your affiant believes that illegal narcotics are being stored and sold from the above listed location. Based on the above information, your affiant requests that a warrant be issued for the address of 5516 Willow Cliff #461.

Exhibit A