IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. CR-15-128-D ) |
| VICTOR DEWAYNE GAINES, | ) ) |
| Defendant. | ) ) |

**O R D E R**

Before the Court are the United States' Motion to Reconsider Suppression of Evidence [Doc. No. 40], filed January 5, 2016, and the United States' Amended Motion to Reconsider Suppression of Evidence [Doc. No. 43], filed January 7, 2016, with a redacted exhibit. The government seeks reconsideration of the Court's Order of December 15, 2015 [Doc. No. 37] (hereafter, the "Order"), granting Defendant's motions to suppress evidence. On January 20, 2016, Defendant timely responded to the Motions, which are fully briefed.[1]

In granting Mr. Gaines' motions to suppress, the Court determined that evidence seized under the authority of a search warrant issued by a state district court judge must be suppressed because the affiant for the warrant, Detective Keith Medley of the Oklahoma City Police Department, recklessly disregarded the truth in applying for the search warrant and a full disclosure of the true facts would have altered the finding of probable cause to search

---

[1] The Court set a deadline for Defendant's response at a pretrial conference held on January 6, 2016; a two-week deadline was found to be reasonable because defense counsel was proceeding to trial in another case on the same docket. The government has not filed, or requested leave to file, a reply brief.

apartment number 461 of the Willow Cliff Apartments located at 5516 Willow Cliff Road in Oklahoma City, Oklahoma (hereafter, "Apt. 461"). The Court further ordered the suppression of statements Mr. Gaines made to police officers while he was detained for execution of the warrant, and keys he surrendered to the officers. By its Motions, the government seeks reconsideration of only the first ruling regarding the validity of the search warrant. The government challenges the factual findings on which the Court based its rulings that the affidavit for the warrant contained false statements and omissions of material facts that must be corrected pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), and challenges the Court's conclusion that the corrected affidavit fails to establish probable cause for issuance of the search warrant consistent with *Illinois v. Gates*, 462 U.S. 213 (1983).

As a preliminary matter, the Court notes that the government seeks reconsideration of a suppression order entered over a month ago. The court of appeals has held that while parties to a criminal case may move for reconsideration of adverse rulings, such motions "cannot be brought at simply any time." *See United States v. Randall*, 666 F.3d 1238, 1242 (10th Cir. 2011). The court has looked to the nature of the underlying order to determine what time limit to apply and has generally applied the time limit for taking an appeal. *See id*. at 1242-43. In this case, the government had 30 days to appeal the Order, and thus, its Motions were timely filed, even though they were filed on the eve of a pretrial conference held January 6, 2016, for a jury trial set to commence on January 12, 2016. *See United States v. Cook*, 599 F.3d 1208, 1212 (10th Cir. 2010); 18 U.S.C. § 3731; Fed. R. App. P. 4(b)(1)(B).

Turning to the merits of the Motions, reconsideration of a prior ruling falls within the discretionary authority of a district court. As recently explained by the court of appeals:

> A motion to reconsider may be granted when the court has misapprehended the facts, a party's position, or the law. *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Specific grounds include: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Id*. A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier. *Id*.

*United States v. Christy*, 739 F.3d 534, 539 (10th Cir.), *cert. denied*, 135 S. Ct. 104 (2014). Here, the government does not present any circumstance that would justify reconsideration of the Court's prior ruling. The prosecution merely wishes to revisit issues that have already been addressed, and to submit an exhibit and arguments that could have been presented in response to Mr. Gaines' motion to suppress based on the invalidity of the search warrant.[2]

First, the government submits as an exhibit to its Motions a document that it identifies as "Mr. Gaines' VARUNA report" and represents to be like a report that was discussed during an evidentiary hearing on Mr. Gaines' motion to suppress. *See* United States' Mot. Reconsider [Doc. No 40], pp.3-4.[3] At the hearing, neither party offered into evidence the

---

[2] Notably, the government does not ask the Court to reopen the hearing on the motion so that additional evidence may be received. *See United States v. Huff*, 782 F.3d 1221, 1224-25 (10th Cir. 2015) (district court may elect to reconsider a suppression ruling to cure a prosecutor's oversight if doing so serves the underlying purpose of the exclusionary rule).

[3] The hearing occurred over two separate days because the government did not provide before the hearing some discovery materials that defense counsel had requested. Det. Medley was examined by defense counsel during the first hearing about a VARUNA report that was produced by the government immediately before the hearing, but Det. Medley referred during his testimony to multiple "VARUNA reports" and identified the one provided to the defense as simply "a VARUNA report," not necessarily the one he had
(continued...)

VARUNA report that Det. Medley used to prepare his affidavit, or otherwise provided a VARUNA report to the Court to assist in considering the evidence or deciding the motion. So the Court is not inclined to consider a document submitted now – divorced from any testimony and subject to interpretation – simply to entertain belated arguments by the government that seem less than candid.[4] Clearly, the exhibit is not new, previously unavailable evidence.

Second, the government asserts a need to correct clear errors in the Court's factual findings regarding Det. Medley's reckless disregard for the truth. As to Mr. Gaines' criminal history, the government attempts to evade Det. Medley's testimony at the September 23, 2015 hearing. Det. Medley testified unequivocally that he reviewed Mr. Gaines' 2009 arrest report before attesting in his affidavit to Mr. Gaines' arrest for multiple drug trafficking offenses (*see* 9/23/15 Hr'g Tr. 12:12-17, 13:5-19), but admitted that the arrest report showed Mr. Gaines was not in fact arrested in 2009 for possession of a controlled substance. *Id*.

---

[3](...continued)
relied on. *See* 9/23/15 Hr'g Tr. 5:18-7:7. At the second hearing, Det. Medley testified that he had reviewed some VARUNA reports and a cover sheet in preparation for the hearing, and had brought a copy with him; he was not questioned further about the documents after he admitted that Mr. Gaines did not have any arrest for illegal drugs as stated in his affidavit. *See* 11/18/15 Hr'g Tr. 6:7-7:3.

[4] The government argues that its exhibit is the report Det. Medley "referenced and relied on . . . to determine Mr. Gaines' prior arrests," despite Det. Medley's testimony (*see supra*, note 2) and despite acknowledging in accompanying footnotes that multiple VARUNA reports may have existed and one may have been incomplete. *See* United States' Mot. Reconsider [Doc. No. 40], pp.3-4. Further, the government utilizes the exhibit to argue that Det. Medley was not required to do an exhaustive search before attesting in his affidavit to Mr. Gaines' history of drug trafficking arrests. But the Court based its finding of recklessness on Det. Medley's failure to utilize readily available information, as well as his misrepresentation and omission of other facts and his demeanor while testifying, as discussed *infra*. *See* 12/15/15 Order [Doc. No. 37], pp.8-10.

13:20-14:7. The Court expressly relied on this testimony in finding that Det. Medley's false statements regarding Mr. Gaines' criminal history were recklessly made (*see* Order, p.6), and made a credibility finding that accepted "as true Det. Medley's hearing testimony in which he made concessions unfavorable to the government regarding . . . the validity of the search warrant." *See* Order, p.8. The government also ignores the fact that the Court's finding of reckless disregard for the truth was based on both "the substance of Det. Medley's testimony and his demeanor as a witness," by which he conveyed a lack of concern about the falsity of his statements, particularly those regarding Mr. Gaines' prior arrests. *See* 12/15/15 Order [Doc. No. 37], p.8. In fact, when confronted during the hearing with the obvious error in his affidavit regarding Mr. Gaines' criminal history, Det. Medley continued to deny his mistake, insisting that the 2009 arrest was drug-related even if Mr. Gaines was not arrested for the drug offenses listed in the affidavit. *See* 9/23/15 Hr'g Tr. 15:1-24. Det. Medley seemingly did not care whether his sworn statements to the state district court judge were completely accurate or true.

Similarly, the government attempts to recast Det. Medley's testimony regarding his surveillance of Apt. 46l on January 17, 2015;[5] the results of a trash pull that day; and his representation as a fact that multiple baggies found in the trash contained marijuana residue.

---

[5] Although this surveillance occurred three days before Det. Medley applied for the search warrant on January 20, 2015, he represented to the issuing judge that it had occurred within the past 48 hours. However, the Court did not find this misstatement to be material.

Regarding Det. Medley's statement in his affidavit that "an unknown black male [child] emerged from the apartment" with two trash bags, the government disagrees with the Court's correction of the affidavit to say the child "emerged from the vicinity of the apartment." *See* Order, Ex. A. Det. Medley testified under examination by defense counsel as follows:

> Q  And could you see the door of the apartment that he came out of or was it obstructed?
>
> A  The door would be obstructed. It would be -- the door would face east and I would be sitting to the south so where I could see in and out. I wouldn't actually be able to see the front door.
>
> Q  But could you see the front door from where you were sitting that day?
>
> A  The actual door itself, no. I could see the doorway.
>
> Q  Could you see if there were any bags outside the doorway?
>
> A  No, sir.

11/18/15 Hr'g Tr. 10:12-20. The government views the Court's use of the word "vicinity" as unduly broad in light of Det. Medley's testimony that he could see the doorway. But what Det. Medley characterized as a "doorway" does not fit a common-sense definition of the word; he was sitting perpendicular to the apartment and was not "actually . . . able to see the front door" or any bags sitting outside of it. The Court stands by its characterization of Det. Medley's testimony, from which it is clear that he did not actually see the child emerge from the apartment but saw the child step into his line of sight of Apt. 461. It was equally clear to the Court from Det. Medley's testimony that the wording of his affidavit overstated

his observations, not unlike his statement that he saw Mr. Gaines "come and go from the apartment" when he actually saw Mr. Gaines enter it one time. *See* Order, pp.7-8 & Ex. A.

Regarding a prescription pill bottle found in the trash, the government challenges the Court's finding of a reckless omission by Det. Medley in stating the label on the bottle bore Mr. Gaines' name without disclosing it had an address other than Apt. 461. The government makes an unfounded assertion that the Court gave this omission "considerable weight," and argues that the address is immaterial. In the government's view (based on factual argument at odds with some of the Court's findings), the mere presence of a pill bottle with Mr. Gaines' name in a trash bag associated with Apt. 461 "strengthens the probable cause determination." *See* United States' Mot. Reconsider [Doc. No. 40], p.10. The Court sees no error in its finding of a material omission because the sole purpose of mentioning the pill bottle was to connect Mr. Gaines to Apt. 461 – assuming the trash bags came from there – and to include this connection in the mix of facts to show he was using the apartment for illegal drug trafficking. With a different address, the pill bottle suggests Mr. Gaines may have been present in the apartment and discarded trash there, but it weakens any link between him and the apartment.

The government also claims the Court erred in finding reckless conduct by Det. Medley in his representation to the state court judge that the trash bags contained "several sandwich baggies tear-offs with marijuana residue" when actually two baggies contained "little flecks of a green substance" that Det. Medley suspected to be marijuana.

7

*See* 11/18/15 Hr'g Tr. 14:24-15:10; 16:17-20. In making this assertion, the government argues that the Court wrongly relied on the lack of any forensic testing of the substance in the baggies, and ignored Det. Medley's training and experience. In fact, the Court noted the lack of testing in summarizing Det. Medley's hearing testimony, and noted that his testimony included a "conclusory reference to prior experience." *See* Order, p.7. The government does not contend the Court's summary was in any way incorrect or incomplete. *See* United States' Mot. Reconsider [Doc. No. 40], p.8 (citing 11/18/15 Hr'g Tr. 19:24-20:2).[6] The Court cited the absence of any testing or any factual basis to establish the baggies contained marijuana, as well as Det. Medley's demeanor as a witness, to explain why his affirmative statement of the presence of marijuana residue was found to be a reckless misrepresentation. *See* Order, pp.9-10.

The only evidence that the government contends was overlooked by the Court are certain statements regarding Det. Medley's law enforcement education and experience in his affidavit. These statements appear in background paragraphs that primarily focus on Det. Medley's knowledge and expertise regarding criminal street gangs and their operations (which include 20 numbered paragraphs of information regarding street gangs, preceding

---

[6] This excerpt of Det. Medley's testimony at the hearing states in full:

Q    And your analysis or conclusion that it is marijuana residue, is that based on your experience, training, and contact with marijuana over the years?

A    Yes, sir.

8

four unnumbered paragraphs specific to Mr. Gaines' case). The government contends these two statements demonstrate Det. Medley's "experience identifying illegal narcotics":

> Your affiant has attended schools specializing in the detection, identification, and investigation of drug related offenses, to include transportation of drugs and money, distribution and sale of illicit drugs, methods of manufacture and use of illegal drugs, and investigative methods and tools . . . .
>
> Your affiant has participated at [sic] several large scale gang investigations in the Oklahoma City metro area. As a result of the investigations you [sic] affiant worked as an undercover officer in the purchase of numerous firearms and pounds of illegal narcotics from local gang members.

*See* United States' Mot. Reconsider [Doc. No. 40], p.8 (quoting Medley Aff., United States' Resp. Br., Ex.1 [Doc. No. 22-1], p.2).[7] These general statements do not support the government's argument that Det. Medley's training and experience "establish his ability to identify" marijuana or, more importantly, to know the substance he observed in two baggies was marijuana residue. *See id*. Nor did Det. Medley state in his affidavit or hearing testimony how, or if, he applied his training and experience to conclude the baggies contained marijuana residue.

The facts of this case are unlike ones on which the government relies to argue that the testimony of a law enforcement officer who is trained to identify marijuana may provide a sufficient basis to conclude that a particular substance was marijuana, without any need for chemical testing. For example, in *United States v. McCormick*, 468 F.2d 68 (10th Cir. 1972), the court of appeals concluded that a border patrol agent "who had smelled marijuana

---

[7] The affidavit also appears in the record as Exhibit 1 to Defendant's Motion to Suppress Evidence [Doc. No. 19-1].

approximately 100 times previous to this occasion" and testified that he could identify marijuana by its distinctive odor, had probable cause to search a van "upon his detection of the odor" and other observations, such as suspicious behavior of the driver and plain view of objects in the van. *Id*. at 72-73, 74. In reaching this conclusion, the court agreed with the holdings of other federal appellate courts that "[a] border patrol agent who has learned how to identify marijuana by sight or by its odor has probable cause to search and seize and to effect arrests upon discovery of marijuana in a vehicle." *Id*. at 74.[8]

The Court's research reveals that probable cause has been found where there is a sufficient factual basis for the affiant's identification of an illegal substance. *See United States v. Loucks*, 806 F.2d 208, 209 n.1 (10th Cir. 1986) ("Where there is a legitimate reason for stopping a vehicle, and the officer thereafter detects the odor of marijuana emanating from the stopped vehicle, *and is by virtue of training or experience able to identify it as marijuana*, an ensuing search is based on probable cause . . . .") (emphasis added); *United States v. Cook*, 949 F.2d 289, 292-93 (10th Cir. 1991) ("magistrate is entitled to rely on the expert opinions of officers [that white substance was cocaine] when supporting factual information is supplied in the affidavit"). In this case, Det. Medley neither provided the state court judge, nor this Court, with any factual basis from which to conclude that he could

---

[8] The government also relies on *Acker v. Dinwiddie*, No. 10-CV-114-GKF-FHM, 2013 WL 607856, *3-*4 (N.D. Okla. Feb. 19, 2013), in which a federal district court rejected a habeas claim alleging insufficient evidence to prove possession of marijuana with intent to distribute, where a deputy sheriff testified based on his expertise in identifying marijuana that bricks of bundled "green leafy substance" was marijuana; the deputy was "trained in the recognition of marijuana, and estimated that he had come into contact with marijuana in excess of 500 times."

identify marijuana residue based on green flecks of a substance in a baggie. Therefore, the Court did not err in finding that Det. Medley recklessly disregarded the truth in affirmatively stating that the baggies contained marijuana residue.

Finally, the government seeks reconsideration to correct what it believes to be clear error by the Court in concluding that the true facts (as found by the Court) were insufficient to permit a finding of probable cause for issuance of the search warrant. The Court disagrees with this assessment. Were the Court to revisit its ruling on Mr. Gaines' motion to suppress, the Court would find insufficient reason, even in light of the government's newly asserted arguments, to permit the government to utilize evidence obtained from Apt. 461 with an invalid search warrant. Because the Court remains convinced that its factual findings based on the evidence presented at the September 23 and November 18 hearings are correct, it adheres to the facts set forth in the corrected affidavit shown by Exhibit A to the Order.[9] The question raised by the government's Motions is whether the corrected affidavit establishes probable cause to search Apt. 461 for evidence of marijuana and marijuana trafficking, as requested by Det. Medley and authorized by the state court judge.

"A search warrant can issue only upon a showing of probable cause. The supporting affidavit must provide a substantial basis to conclude that there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Long*, 774 F.3d 653, 658 (10th Cir. 2014), *cert. denied*, 135 S. Ct. 2068 (2015) (citations and

---

[9] The Court created the corrected affidavit by striking reckless misstatements of fact and adding facts that were recklessly omitted. *See United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015).

internal quotations omitted); *see Gates*, 462 U.S. at 236; *United States v. Biglow*, 562 F.3d 1272, 1280-81 (10th Cir. 2009). A judge's "task in determining whether probable cause exists to support a search warrant 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place,' . . . under the totality of circumstances presented in the affidavit." *See United States v. Tuter*, 240 F.3d 1292, 1295 (10th Cir. 2001) (quoting *Gates*, 462 U.S. at 238). The totality-of-circumstances standard precludes "a 'divide-and-conquer analysis of facts [in isolation] to determine whether probable cause existed. However, neither may a court arrive at probable cause simply by piling hunch upon hunch." *See United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir. 2004) (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). To satisfy the "fair probability" standard, the affidavit must show "a nexus between suspected criminal activity and the place to be searched." *See Biglow*, 562 F. 3d at 1278.

Applying these principles to the facts stated in the corrected affidavit in this case, there was no probable cause to issue the search warrant for Apt. 461. In urging the Court to reach a different conclusion, the government argues facts that were not found by the Court (*see* United States' Mot. Reconsider [Doc. No. 40], pp. 11-12), and repeats arguments that were previously rejected. For example, the government relies heavily (then and now) on Det. Medley's statement that law enforcement officers had "received information from

several different sources that [Mr. Gaines] was selling illegal narcotics from [Apt. 461]." *See* Order, Ex. A. Although the affidavit is silent regarding the sources' veracity, reliability, or basis of knowledge, the government contends no such information is needed because the reports were corroborated by the fact there was more than one source and by information obtained from the trash pull. The Court does not view the trash pull as a substantial basis for corroboration of the confidential sources, given the tenuous link provided by items in the trash to either illegal narcotics trafficking or Mr. Gaines. Further, given Det. Medley's vague reference to "several different sources" and his propensity in this case to overstate the facts, the Court is unwilling to compare this case to other cases cited by the government in which a second tip from an independent source was used to corroborate a confidential informant's report. *See* United States' Resp. Br. [Doc. No. 22], pp.7-8 (citing *United States v. Artez*, 389 F.3d 1106, 1114 (10th Cir. 2004)). Det. Medley provided insufficient factual information to conclude that multiple tips regarding Apt. 461 were provided independently from one another but sufficiently close in time to warrant inclusion in the probable cause analysis.

Accordingly, one is left with uncorroborated tips of illegal drug trafficking by Mr. Gaines from Apt. 461, Mr. Gaines' membership in the NHC 60 street gang (a significant fact only if this gang is involved in narcotics trafficking, which is not shown by the affidavit or record), Mr. Gaines' entry into Apt. 461 on one occasion, and trash bags carried by a child from the vicinity of Apt. 461 containing an item bearing Mr. Gaines' name but a different address and containing two baggies with suspected but unconfirmed marijuana residue.

These facts are insufficient "to lead a prudent person to believe that a search of [Apt. 461] would uncover [marijuana] or evidence of [illegal drug trafficking]." *See United States v. Danhauer*, 229 F.3d 1002, 1006 (10th Cir. 2000).

For these reasons, the Court finds that the government has failed to justify reconsideration of the Order suppressing evidence from Apt. 461.

IT IS THEREFORE ORDERED that the United States' Motion [Doc. No. 40] and Amended Motion [Doc. No. 43] to Reconsider Suppression of Evidence are DENIED.

IT IS FURTHER ORDERED that this case is set for trial on the Court's March 8, 2016 jury trial docket. Any motions in limine, requested voir dire, and requested jury instructions shall be filed by February 29, 2016. The parties will receive separate notice of the pretrial conference setting.

IT IS SO ORDERED this 10th day of February, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE